39161. MONTGOMERY *et al.* v. MAYOR &c. OF ATHENS *et al.*

DECIDED DECEMBER 5, 1961.

*Albert B. Saye, R. Carter Pittman, Joseph J. Gaines,* for plaintiffs in error.

*James Barrow,* contra.

JORDAN, Judge. 1. The pertinent facts set forth in the petition for certiorari and the answer filed thereto, as amended, show that the petitioners were arrested in the City of Athens around 10:45 on the morning of Saturday, May 6, 1961, on a charge of "Disorderly Conduct—Parading without a Permit"; that at the time of the arrest each of the petitioners was carrying in his hands one or more cardboard signs, none larger than 24" x 19", which signs read as follows: "Integration—Segregation is a Religious Issue, Ne. 13:1-3." "Stay Segregated. The Bible the Law of the Land. Isaiah 33:22." "Keepers of Law Chief Integrators. Ezra 9:2." "Petition Committee on Un-American Activities to Visit Athens, Ga." "Integration Started a Diversity of Languages. Gen. 11." "Segregation of God, Integration of the Devil. Ezra 10:11."

The petitioners, who had no musical instrument or sound amplifier of any kind, walked not in a group, but individually, 20 to 50 feet apart. They walked with their signs on the sidewalk on the south side of Broad Street only, which sidewalk is contiguous to the campus of the University of Georgia and while walking on said sidewalk crossed a street known as Herty Drive leading into the campus of the University of Georgia on its north side. At such time and place the petitioners were joined by two other persons carrying similar signs. The petitioners were warned by police officers not to picket on the streets. No permit for a parade had been issued by the chief of police on the day of the petitioners' arrest. At 11 a.m. on the day on which the arrest occurred the Attorney-General of the United States was to deliver a speech on the campus of the University of Georgia, which speech had been given wide publicity in the press as representing the views of the Executive Department of the United States Government with respect to civil rights and racial desegregation. The petitioners were not disorderly on this occasion and nothing they did interrupted traffic or interfered with the use of the streets by pedestrians. On the trial of the case in the recorder's court the charge of disorderly conduct was dismissed and the petitioners were found guilty of "Parading without a Permit" and a fine imposed upon each of them.

Pertinent portions of the ordinance of the City of Athens under which the petitioners were convicted read as follows: "Section 2. A person desiring to secure a parade permit shall make application in writing to the Chief of Police at least twenty-four hours in advance of the proposed parade which shall contain the following information: (a) the time proposed for the parade; (b) the route of the proposed parade; (c) the number of vehicles (if any) anticipated in the proposed parade; (d) the number of persons anticipated in the proposed parade; (e) the name and address of the person or organization sponsoring, promoting or organizing the proposed parade; and (f) the name and address of the person making the application for a parade permit.

"Section 3. The Chief of Police shall review the facts set forth in the application; shall ascertain the extent of traffic to be anticipated at the time and along the route of the proposed parade; shall determine the availability of police forces to escort the proposed parade and to direct traffic in conjunction with the proposed parade; and shall determine in the light of these considerations whether or not the proposed parade will unreasonably burden and interfere with the normal use of the streets of the City of Athens by the public. In the event the Chief of Police determines in view of the considerations listed above that the proposed parade will unreasonably burden and interfere with the normal use of the streets of the City of Athens by the general public, he shall deny the request for a parade permit; and if he shall determine in view of the considerations listed above that the proposed parade will not unreasonably burden or interfere with the normal use of the streets of the City of Athens by the general public, he shall grant the parade permit. . ."

The ordinance defines a parade as "any parade, march, ceremony, demonstration, exhibition or procession of any kind upon any public street of the City of Athens."

Applying the ordinance to the above stated facts we are of the opinion that the petitioners were not engaged at the time and place in a parade as contemplated by the ordinance. While the definition of parade as given in the ordinance appears to be broad and inclusive, and would even encompass a foot-

ball fan or fans waving a banner en route to a football game, a careful reading of sections 2 and 3 of the ordinance clearly indicates that it was not intended to apply to such activity as was engaged in by the petitioners.

The wording of the ordinance makes it manifest that it was intended to apply to a parade of vehicles or a number of persons in a group using the streets of the city. The application for such a parade is required to set forth the time and route of the parade and the number of vehicles and persons in the proposed parade. Whether or not such permit shall be granted is determined by the "extent of traffic at the time and along the route of the proposed parade, the availability of police force to escort the proposed parade and to direct traffic in conjunction with the proposed parade," and whether or not such parade "will unreasonably burden and interfere with the normal use of the streets of the City of Athens by the public."

The undisputed facts in this case show that the petitioners did not obstruct or interfere with either vehicular traffic or pedestrian traffic and were not engaged in any activity which would require a police escort to direct traffic in conjunction therewith. Not only did they not *unreasonably* burden and interfere with the normal use of the streets by the public in the City of Athens but the undisputed facts show that their activity did not burden or interfere with the normal use of the streets in any manner whatsoever. We are therefore of the opinion that the activity of the petitioners on this occasion did not constitute a parade as contemplated by the ordinance or by the usually accepted definition of a parade. Webster's New International Dictionary defines a parade as a "pompous show; formal display or exhibition" and "any march or procession; a formal public procession; the movement of any body marshaled in something like military order; as a parade of firemen; a circus parade."

2. It is a well-established rule that the constitutionality of a statute will not be decided if the case can be properly determined without deciding such question. *DeKalb County v. Broome*, 215 Ga. 203 (109 SE2d 769). While this court has authority to pass upon the constitutionality of a municipal ordinance (*Thompson v. City of Atlanta*, 176 Ga. 489, 168 SE

312; *Perkins v. Hattiesburg Brick Work*, 212 Ga. 804, 96 SE2d 361, and cases therein cited), it will not be necessary to do so in this case since a determination has been made on other grounds. Excellent briefs on this point were filed by counsel for plaintiffs in error and defendant in error.

The court erred in denying the petition for certiorari and the judgment is accordingly reversed.

*Judgment reversed. Nichols, P. J., and Frankum, J., concur.*